## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| PAULA L. MAULOLO,<br><br>                    Plaintiff,<br><br>vs.<br><br>BILLINGS CLINIC and SUN LIFE ASSURANCE COMPANY of CANADA,<br><br>                    Defendants. | CV 19-69-BLG-SPW<br><br>**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER** |

Before the Court are proposed findings of fact and conclusions of law submitted by Plaintiff Paula L. Maulolo ("Maulolo") and Defendant Sun Life Assurance Company of Canada ("Sun Life") on Maulolo's claim for benefits under the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). (Docs. 31, 32.) The parties stipulated to "a paper bench trial" on the administrative record of Maulolo's claim under Fed. R. Civ. P. 52(a). (Doc. 28.) At issue is whether Maulolo is entitled to long term benefits under Billings Clinic's group policy. (*See*, A.R. 791.)

After considering the parties' submissions, the Court finds Maulolo to be disabled and entitled to benefits under ERISA.

*/ / /*

## I.   Findings of Fact

Billings Clinic employed Maulolo between January 7, 2008 and January 12, 2018, when she formally resigned.  (A.R. 160, 790, 818.)  Maulolo held three positions during this time, including Internal Medicine Residency Program Administrator, Organizational Development Consultant, and Medical Education Specialist.  (A.R. 20, 160, 265.)  Maulolo also owned a jiujitsu dojo with her husband.  (A.R. 123, 265.)

Maulolo first sought medical care for radiating back and leg pain in the spring of 2016, after years of pain symptoms.  (A.R. 414, 472, 474, 476, 480, 538.) The pain affected Maulolo's homelife and physical activities.  (A.R. 476.)  She had lost 140 pounds over the previous seven years from exercise, but now found her capabilities limited.  (A.R. 480-81.)  On December 3, 2016, an MRI revealed a sacral cyst at the L5-S1 vertebra.  (A.R. 465-66, 484.)  Maulolo undertook nonoperative measures to alleviate the pain, including injections, electrical stimulation, and bed rest, and ultimately opted to have a lumbar drain placed in the cyst.  (A.R. 484-85.)  The drain improved radicular symptoms but caused intense sacral pain.  (A.R. 485.)  On February 2, 2017, Maulolo had a shunt installed and experienced symptomatic relief for approximately 48 hours.  (*Id.*)  The incision for the shunt, however, began building fluid, causing positional headaches, and did not result in lasting relief.  (*Id.*)  Maulolo continued to work through these procedures

2

and integrated various measures to find comfort, such as a standing desk or laying down for brief periods to help alleviate her pain. (A.R. 820.)

Maulolo had the cyst surgically removed in August 2017 by Dr. Feigenbaum, a neurosurgeon in Dallas, Texas. (A.R. 215-226, 397.) Dr. Feigenbaum identified the cyst as a sacral meningeal cyst. (A.R. 219.) Maulolo took medical leave for the month of August, and by the end of the month had made "slow but steady" progress with the use of prescription medication, but still had some continuing sacral and leg pain. (A.R. 398.) Maulolo had a post-op follow-up in Billings, Montana, with Dr. Kari Kale in October 2017. (A.R. 254-255.) Dr. Kale's notes state that Maulolo was "[s]till in lots of pain, but gradually improving," had increased her steps to 8,000 – 10,000 per day, could not stay in one position too long, and uses a "sit to stand desk at work." (A.R. 254.) Maulolo followed up again with Dr. Kale on November 15, 2017 and reported to her that her pain was gradually worsening, activities worsened the pain, and work was difficult. (A.R. 252-253.)

Dr. Kale referred Maulolo to Dr. Michael Schabacker, a pain specialist, who consulted with Maulolo on December 12, 2017. (A.R. 205.) Dr. Schabacker's notes documented Maulolo's reports of "persistent deep aching and stabbing pain in the lower reaches of her lumbar spine" that "radiates distally into her lower extremities but does not follow a radicular pattern." (A.R. 205-206.) Dr.

3

Schabacker further documented severe and incapacitating pain that was creating "substantial despair in her life," including dependence on family for household duties like cooking. (*Id.*) Dr. Schabacker concluded: "Clearly, the impact of this chronic pain condition on her life both at home and at work is dramatic." (A.R. 210.) Dr. Schabacker increased Maulolo's pain medications (Oxycontin and Oxycodone) and referred her to Dr. Giancarlo Barolat in Denver, Colorado, for possible spinal cord stimulation therapy. (A.R. 210.)

Billings Clinic had provided workplace accommodations for Maulolo, including a special chair, a standing desk, permission to use a conference room to lay down, and a yoga mat to lay down in her office. (A.R. 820.) In December 2017, Maulolo requested additional accommodations to allow her to work from home. (*Id.*) Billings Clinic denied Maulolo's request for accommodation on January 5, 2018, based on the requisites of her job description, such as attending meetings, escorting medical students and residents, and other in-person tasks. (*Id.*)

Maulolo was also informed on January 5, 2018 that her 12 weeks of leave was expiring on January 8, 2018; that she may be placed on inactive status for up to 12 weeks; and that she may be eligible for long term disability benefits under Billings Clinic's group policy with Sun Life. (A.R. 791.) Maulolo applied for long term disability with Sun Life on January 10, 2018 and resigned from her position on January 12, 2018. (A.R. 18-20, 790-791.)

4

After her resignation, Maulolo continued medical treatment with consistent reports of incapacitating pain. (A.R. 421-425.) Dr. Schabacker discussed with her the possibility of a conventional spinal cord stimulator trial in Colorado with Dr. Barolat. (A.R. 430, 432, 436-437.) As part of the trial, it was recommended that a reduction in pain medication occur. (A.R. 436.) Maulolo then underwent spinal cord stimulator treatment on April 20, 2018, which involved the percutaneous placement of a temporary stimulator. (A.R. 633.) Maulolo initially reported near-complete pain relief in the short-term and considered a permanent stimulator. (*Id.*) Dr. Barolat opined that Maulolo suffered "from a chronic, severe, permanent neuropathic pain condition with the characteristics of a lumbar postlaminectomy syndrome," and was a "great candidate for a permanent spinal cord stimulation implant." (A.R. 634.) On June 19, 2018, Dr. Barolat implanted a permanent spinal cord stimulator. (A.R. 635.)

Maulolo visited Dr. Schabacker's nurse in a follow-up to the stimulator installation on August 1, 2018. (A.R. 678.) Maulolo reported her frustration with the amount of relief from the stimulator; while some improvement had occurred, it was not at the level to which she had hoped. (*Id.*) Maulolo felt the pain was well-managed when immobile but worsened with activity and included new pain in her thorax. (*Id.*)

5

Two-weeks later, on August 14, 2018, Dr. Schabacker noted that Maulolo was "a viable candidate for application disability [*sic*] given the substantial impairment in function chronic pain condition has imparted. ... It is apparent she is substantially limited functionally." (A.R. 677.) Dr. Schabacker reiterated his professional opinion in a February 2019 letter that as Maulolo's treating physician she was disabled as of December 29, 2017. (A.R. 878-879.) The Social Security Administration determined Maulolo was disabled as of January 5, 2018. (A.R. 887.)

Sun Life was unable to make a disability determination based on its initial processing of Maulolo's claim. (A.R. 1007.) Sun Life subsequently interviewed Maulolo on January 25, 2018, during which Maulolo disclosed that she had two jobs in addition to her position as a Medical Education Specialist at Billings Clinic: the aforementioned jiujitsu dojo, Big Sky Gracey Jiu Jitsu, LLC, that she co-owns with her husband; and a sales-commission job with health coaching company Optavia. (A.R. 122-123.) Sun Life further determined "in lieu of an ISO search ... a background check given the claim circumstances would be best." (A.R. 1009.) No explanation was given as to what "claim circumstances" prompted the background check. (*Cf.* A.R. 122 and 1009.) Sun Life obtained a background check investigation from PHOTOFAX, INC. (A.R. 264-311.) The background check revealed details of Maulolo's day-to-day life, from recreational activities to

6

social media posts, and included interviews with neighbors. (*Id.*) The investigator

summarized the neighbors' observations as confirming her injuries, surgeries, and

activity level pre- and post-injury. (A.R. 309-310.)

Nevertheless, Sun Life rejected Maulolo's claim on March 13, 2018. (A.R.

342-348.) Sun Life's rejection letter stated:

> we have determined that the medical evidence does not support that you
> would be precluded from performing the Material and Substantial
> Duties of your Own Occupation as Medical Education Specialist I
> throughout and beyond the Elimination Period. As such, you do not
> meet the definition of Total Disability and benefits are denied.

(A.R. 347-348.) "Own Occupation" is not defined in the Group Policy or in the

rejection letter. (*See generally*, A.R. 342-343.) The Group Policy and rejection

letter, however, define "Elimination Period," in relevant part, as:

> the number of consecutive days of Disability, shown in the Benefit
> Highlights, which must be completed before we will pay you the
> benefit. No benefits will be paid to you for any portion of your
> Disability that occurs during your Elimination Period.

(A.R. 342-343.) Maulolo's Elimination Period ran from December 29, 2017

through March 29, 2018. (*Id.*) Last, the Policy defines "Total Disability"

and "Totally Disabled" as:

> during the Elimination Period and the next 24 months you are unable
> to perform one or more of the material and substantial duties of your
> Regular Occupation.
>
> After 24 months of receiving Total and Partial Disability benefits
> combined, Total Disability and Totally Disabled means you are unable
> to perform with reasonable continuity any Gainful Occupation for

which you are or could become reasonably qualified for by education, training and experience.

Total Disability must be caused by an Accident or Sickness and must commence while you are insured under the Policy.

(A.R. 36.)

Maulolo appealed Sun Life's benefit determination on March 22, 2018 and included medical records from ten additional providers. (A.R. 357, 614.) Sun Life forwarded Maulolo's medical records to Dr. Germaine N. Rowe for review. (A.R. 584, 589.) Dr. Rowe noted that the clinical evidence supported Maulolo's physical condition as functionally impaired and concluded that "from the perspective of Pain Medicine, the medical data supports that the claimant has remained functionally impaired from 12/29/17 to the present [June 15, 2018]." (A.R. 586.) But Dr. Rowe also found that Maulolo had the ability to perform certain physical activities between 12/29/17 and 4/19/18, such as sitting 6 hours per 8-hour day; walking and standing 60 minutes/hour at a time, 8 hours total per day; and lifting and carrying 50 pounds occasionally and 25 pounds frequently. (A.R. 587.)[1]

Maulolo's appeal was denied on July 3, 2018 on the grounds of insufficiency of evidence to support continuous "Total Disabled" status throughout the

---

[1] Sun Life also referred Maulolo's medical records for a psychiatric opinion relative to Maulolo's claim of disability due to psychiatric issues. (Doc. 25 at ¶ 54.) But the denial of benefits based on psychiatric conditions is not raised in this action. (Doc. 1 at 9 n.1.)

8

Elimination Period.  (A.R. 610.)  Sunlife's denial omitted Dr. Rowe's finding that the medical data supported a finding of functional impairment from December 18, 2017 onward.  (A.R. 614-616.)  Maulolo contacted Sun Life to dispute the decision and to assert that Dr. Barolat had additional records supporting her disability. (A.R. 1023-1024.)  Sun Life agreed to consider Dr. Barolat's records and arrange for Sun Life's consulting physician, Dr. Rowe, to speak with him.  (A.R. 735, 1024.)  Dr. Barolat later confirmed in writing the contents of his discussion with Dr. Rowe, but corrected a mischaracterization, circling the statement: "You stated that the claimant can work a job with prolonged sitting or lifting," and instead hand wrote: "I believe I stated that the claimant needs a FCE [Functional Capacity Evaluation] to evaluate the extent of her work capabilities/limitations."  (A.R. 665, 668.)  Dr. Rowe confirmed Maulolo's functional impairment from December 29, 2017 to July 23, 2018.  (A.R. 662.)

Maulolo told Sun Life she would try to obtain an FCE from Dr. Schabacker on her next visit.  (A.R. 1012.)  On September 1, 2018, Dr. Schabacker noted that "[i]t is apparent she is substantially limited functionally."  (A.R. 677.)  Regarding the ordering of an FCE, Dr. Schabacker appears to write it was not necessary, but the note's message is unclear: "I do not believe that FCE is nothing very [*sic*]." (*Id.*) Sunlife did not request Maulolo to undergo an FCE, and Maulolo never ultimately underwent an FCE.  (A.R. 1-2, 343-344.)

9

Dr. Rowe issued an addendum report on October 3, 2018. (A.R. 720-726.) The addenda included Dr. Barolat's additional reporting but did not alter Rowe's original conclusion relating to the Elimination Period, which included sitting 6 hours per 8-hour workday; walking and standing 60 minutes/hour at a time and 8 hours total per 8-hour workday; lifting and carrying 50 pounds occasionally and 25 pounds frequently; and bending, squatting climbing, kneeling frequently. (A.R. 725.)

Sun Life denied Maulolo's appeal on October 9, 2018. (A.R. 742.) Sun Life based its denial "on the opinion of Dr. Rowe," concluding that while Maulolo had experienced two closed periods of disability, she had failed to demonstrate disability during the Elimination Period, and that she was ineligible because her coverage had ended December 28, 2017, the last full day of work, and no longer "actively at work." (A.R. 742-744.) Sun Life also concluded that Maulolo's medical limitations "would not prevent you from performing the duties of your Regular Occupation as an Administrative Assistant (classified as requiring a sedentary physical exertion level)." (A.R. 742.) Sun Life also explained that Maulolo had exhausted her administrative remedies regarding the disability decision from a physical condition(s) perspective." (A.R. 742.)

Maulolo filed the instant action on June 13, 2019, seeking relief from wrongful denial of benefits under 29 U.S.C. § 1132(a)(1)(B) and (a)(3). (Doc. 1.)

10

Maulolo's claim under § 1132(a)(3) was resolved at summary judgment. (Docs. 27, 29.)

## II.   Conclusions of Law

Under Fed. R. Civ. P. 52(a), the Court must find facts and state conclusions of law separately in an action tried on the facts without a jury. In the context of a claim brought pursuant to 29 U.S.C. § 1132(a)(1)(B), "the district court may try the case on the record that the administrator had before it," notwithstanding Rule 43(a)'s requirement that testimony be taken in open court. *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1094–94 (9th Cir. 1998); Fed. R. Civ. P. 43(a).

ERISA permits an individual to challenge a denial of benefits in federal court. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008); 29 U.S.C. § 1132(a)(1)(B). The district court reviews the determination "'under a de novo standard' unless the plan provides to the contrary." *Id.* at 111 (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, (1989)); *Harlick v. Blue Shield of Cal.*, 686 F.3d 699, 706–07 (9th Cir.2012). Under § 1132(a)(1)(B), a court may also award a successful claimant her attorney's fees and costs of suit, as well as prejudgment interest. 29 U.S.C. § 1132(g)(1); *Blankenship v. Liberty Life Assur. Co. of Boston*, 486 F.3d 620, 627 (9th Cir. 2007).

Maulolo bears the burden of proof to establish disability under the terms of the plan. *Muniz v. AMEC Constr. Mgmt. Inc.*, 623 F.3d 1290, 1294–96 (9th Cir.

11

2010); *Estate of Barton v. ADT Sec. Servs. Pension Plan*, 820 F.3d 1060, 1066 (9th Cir. 2016) ("where an employee must establish an illness to qualify for disability benefits, the burden lies most sensibly with the claimant, who can provide test results, physician reports, and other evidence about her condition.")  The claimant must show they are disabled by a preponderance of the evidence.  *Eisner v. The Prudential Ins. Co. of Am.,* 10 F. Supp. 3d 1104, 1114 (N.D. Cal. 2014).

For Maulolo to be considered disabled under the group plan, she had to be "unable to perform one or more of the material and substantial duties of [her] Regular Occupation" during the 90-day Elimination Period.  (A.R. 36.)  The Court concludes Maulolo has met her burden of proof to establish total disability, that is, "during the Elimination Period and the next 24 months [she was] unable to perform *one or more* of the material and substantial duties of your Regular Occupation." (Emphasis added) (A.R. 36.)

Maulolo's Elimination Period ran from December 29, 2017 through March 29, 2018.  (A.R. 342-343.)  Maulolo provided records for seven visits with healthcare providers during the Elimination Period.  (A.R. 200–204, 381–386, 426–437, 448–451, 709, and 828.)  After her initial denial, Maulolo submitted additional medical records when she realized she was not limited to submitting only three providers' records (the number of available spaces on the form, apparently).  (A.R. 614.)  The records depict chronic back problems, including the

surgical removal of a cyst and installation of a spinal stimulator, and severe pain.

(A.R. 200, 203, 210, 342-348, 381–385, 421-426, 428–432, 435, 436-437, 448,

450, 614, 634-637, 707, 709, 826.)  Chronic pain clearly adversely affected her

ability to work, especially when accommodations in the workplace were no longer

helpful or feasible, by January 2018.  Thus, she decided to leave Billings Clinic

"due to feeling she is unable to manage work physically."  (A.R. 828 – 830.)

Billings Clinic denied her final request for accommodation (to work from home)

because, among other reasons, her position as a "Medical Education Specialist

requires you to attend meetings, take minutes, cover phones and escort medical

students and residents," or in sum, a physical presence.  (A.R. 820.)  Thus, the

record supports that Maulolo was no longer capable of performing "one or more of

the material and substantial duties" of her job at Billings Clinic.

The records also extensively document her discomfort with sitting and

preference to stand amid pain and discomfort for periods as short as 10 minutes,

casting doubt on Sun Life's finding on her ability to do sedentary work.  (*Cf.* A.R.

384-85, 418, 426, 429, 432, 441 with 615, 659-662.)  Maulolo's treating pain

physician, Dr. Schabacker, further explicitly supported Maulolo's claimed

disability, and the Social Security Administration separately determined her

disabled and entitled to Social Security disability benefits.  (A.R. 677, 878-879.)  A

plan administrator's disregard for the Social Security Administration's contrary

13

disability determination is another of the case-specific factors courts may weigh when reviewing a benefit determination. *Montour v. Hartford Life & Acc. Ins. Co.*, 588 F.3d 623, 630 (9th Cir. 2009). Maulolo's condition appears to have been substantially unchanged from the time she left her employment through the final rejection of her claim.

Sun Life's supposition to the contrary that Maulolo was capable of sedentary work, specifically finding she could sit for six hours; lift, carry, pull and push 50 pounds occasionally; and could frequently bend, squat, climb, and kneel; is directly contradicted by her medical records. (A.R. 612-615.) Multiple physicians observed Maulolo's discomfort with sitting and preference to stand amid pain and discomfort. (A.R. 384-85, 418, 426, 429, 432, 441.) Sun Life itself reported in its initial denial letter under the heading, "Restrictions/Limitations per the Attending Physician," that Maulolo may:

> occasionally walk, sit, push, pull. ***May not*** bend, squat, climb, twist, kneel or crawl. Lift/carry indicated 0 lbs. Comments must be able to change positions every 10 minutes, sit to stand. Dr. Kalp [*sic* – Kale] also noted despite surgery pain continues has difficulty maintaining position > 10 minutes. APS dated 1-8-18. (Emphasis added.)

(A.R. 346, 613.) Maulolo's medical records clearly state she cannot sit 6 hours a day; lift or carry 50 pounds occasionally; or bend, squat, climb, twist, kneel or crawl frequently," as Sun Life's reviewing physician, Dr. Rowe, suggests. (*See* A.R. 615.)

14

Sun Life proffers no evidence to contradict Dr. Kale, Dr. Schabaker, or Nurse Practicioner Lisa Genevieve Guthrie's observations relating to Maulolo's discomfort sitting or disability.  In fact, Sun Life's own private investigator appears to confirm Maulolo's transformation from "very active and health-conscious individual" to someone with back issues who "may go on long term disability." (A.R. 309-310.)  While this observation isn't medical by nature, contemporaneous observations by neighbors support her change in circumstances.

The Court also concludes that Sun Life's denial of Maulolo's claim did not apply the same definition of "Total Disability and Totally Disabled" found in Billings Clinic's group policy as stated in the letter of rejection. (*Cf.* A.R. 36 and 347-8.)  The Policy clearly requires the claimant to be "unable to perform *one or more* of the material and substantial duties of your Regular Occupation." (A.R. 36) (emphasis added.)  The rejection letter, on the other hand, states: "the medical evidence does not support that you would be precluded from performing *the Material and Substantial Duties* of your Own Occupation." (A.R. 347-48) (emphasis added).

Here, Maulolo's debilitating pain prevented her from performing "one or more" of the duties contained in her Regular Occupation-equivalent as an Administrative Assistant, which typically requires a sedentary exertion level. Maulolo could not sit for six hours a day nor bend, squat, climb, twist, kneel or

15

crawl. (A.R. 346, 384-85, 418, 426, 429, 432, 441, 613.) Further, the difference in the amount of duties Maulolo could not perform, i.e., "one or more" versus "material and substantial duties," is inaccurate per plan language.

Last, the Court concludes that Sun Life's proposition that Maulolo's records were devoid of any objective evidence of functional impairment and instead consisted entirely of self-reported pain, which her physicians then adopted to support her claim of disability, is unconvincing and runs contrary to Ninth Circuit precedent. (*See* Doc. 32 at ¶¶ 9-10.) "[A] disability insurer cannot condition coverage on proof by objective indicators where the condition is recognized yet no such proof is possible." *Holmgren v. Sun Life & Health Ins. Co.*, 354 F. Supp. 3d 1018, 1028 (N.D. Cal. 2018) (quoting *Cruz-Baca v. Edison International Long Term Disability Plan*, 708 Fed.Appx. 313, 315 (9th Cir. 2017)). Indeed, Sun Life's reliance on objective evidence to deny benefits for a claimant with chronic pain was roundly rejected in *Holmgren v. Sun Life & Health Ins. Co.* and is no more convincing here. *Id.* at 1028-1029. In *Holmgren*, the court noted that "[t]he Ninth Circuit has found that chronic pain, like that of which plaintiff complains, 'is an inherently subjective condition.'" *Id.* (quoting *Cruz-Baca*, 708 Fed.Appx. at 315; see also *Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863, 872 (9th Cir. 2008) (criticizing plan's denial of benefits for lack of objective evidence of pain since it is inherently subjective)).

16

Chronic pain is clearly one condition in which courts have expressly not required objective evidence and, further, the Ninth Circuit has also repeatedly held that "the lack of objective physical findings" is in and of itself insufficient to justify denial of disability benefits. *Eisner*, 10 F. Supp. at 1114 (citing *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 669 (9th Cir.2011)). Other circuits, such as the Second, agree: "It has long been the law of this Circuit that 'the subjective element of pain is an important factor to be considered in determining disability.'" *Valentine v. Aetna Life Ins. Co.*, 125 F. Supp. 3d 425, 439 (E.D.N.Y. 2015) (quoting *Connors v. Connecticut Gen. Life Ins. Co.*, 272 F.3d 127, 136 (2d Cir.2001)).

Therefore, the Court concludes Maulolo has met her burden of proof by a preponderance of the evidence that she was totally disabled and entitled to disability benefits for the period of twenty-four months ending March 29, 2020. Sun Life's denial of Maulolo's claim applied the wrong definition of "Total Disability and Totally Disabled". Maulolo was unable to perform one or more material and substantial duties of her Regular Occupation. Sun Life's denial based on Maulolo's proffering of subjective evidence combined with a perceived lack of objective evidence runs contrary to case law.

Finally, the Court concludes Maulolo's Long Term Disability claim must be remanded to Sun Life for a determination of whether she met the Group Policy's

17

"any occupation" definition of "total disability" after the twenty-four month period ending March 29, 2020.   *Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability Income Plan,* 85 F.3d 455, 460 (9th Cir. 1996).

## IV.   Order

IT IS ORDERED that judgment be entered in Plaintiff Paula L. Maulolo's favor under 29 U.S.C. § 1132(a)(1)(B) for total disability benefits for the twenty-four month period ending March 29, 2020 and Plaintiff be awarded reasonable attorney's fees, costs, and prejudgment interest under 29 U.S.C. § 1132(g)(1).

IT IS FURTHER ORDERED that Plaintiff's Long Term Disability claim be remanded to Sun Life for a determination of whether Plaintiff met the Group Policy's "any occupation" definition of "total disability" after the twenty-four month period ending March 29, 2020.

**IT IS ORDERED**.

DATED this 9th day of September, 2021.

SUSAN P. WATTERS
United States District Judge